The STATE of Ohio, Appellee,

v.

WEAVER, Appellant.

[Cite as *State v. Weaver* (1993), 86 Ohio App.3d 427.]

Court of Appeals of Ohio,
Lawrence County.

No. CA 92–15.

Decided Feb. 18, 1993.

*William Berry,* Lawrence County Assistant Prosecuting Attorney, for appellee.

*Moore, Wolfe & Bentley* and *John Wolfe,* for appellant.

HARSHA, Judge.

After entering a plea of no contest, Kenneth Weaver was found guilty of operating a motor vehicle with a breath-alcohol content in excess of the statutory limit. He appeals his conviction from a judgment entered by the Lawrence County Municipal Court and assigns the following error:

"The Court erred in overruling defendant-appellant's Motion to Suppress the results of the breathilizer [*sic*] test."

After entering a plea of not guilty to the charge of OMVI, appellant filed a motion to suppress the breath test result on the basis that he was denied his statutory right to secure a second test.[1] Appellant's motion asserted that he had indicated to the arresting officer, the dispatcher, and the jailer that he desired a blood test and that he had sufficient money to pay for it.

Instead of introducing testimonial evidence at the suppression hearing, the parties ultimately agreed to submit the suppression issue to the court upon the following stipulated facts: (1) the stop of appellant's vehicle was legally justified; (2) appellant was given a BAC Verifier test upon which he tested seventeen-hundredths of one gram of alcohol per two hundred ten liters of his breath; (3) appellant made a request to be transported somewhere else for another test; (4) appellant was taken to the jail, where he advised the jailer of his request for another test as well as his desire to make a phone call to arrange for a blood test;

---

1. A separate complaint charged appellant with failing to signal when turning, in violation of R.C. 4511.39. The trial court found him guilty of this offense and fined him $20. Since appellant's assignment of error does not attack his. R.C. 4511.39 conviction, we need not consider its propriety in this appeal.

and (5) appellant was placed in a holding cell and never got access to a telephone. Following the suppression hearing, the parties filed memoranda on the suppression issue.

On June 8, 1992, the trial court filed an entry which overruled appellant's suppression motion, finding that appellant was "effectively denied the ability to obtain an alternate test," but further determining that the remedy for this was "something other than suppression." Appellant then changed his plea to no contest, and on June 29, 1992, the trial court entered a judgment finding him guilty of violating R.C. 4511.19(A)(3).[2] The trial court sentenced appellant to ten days in jail, to be suspended upon fulfilling probation terms, and fined him $510.

Appellant's sole assignment of error asserts that the trial court erred in overruling his motion to suppress the BAC Verifier test result. In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g., *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 58, 437 N.E.2d 583, 584; see, also, *State v. Dreher* (July 28, 1992), Highland App. No. 786, unreported, at 5, 1992 WL 188501, at *2. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fausnaugh* (Apr. 30, 1992), Ross App. No. 1778, unreported, at 3, 1992 WL 91647, at *2. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. *Dreher, supra; Fausnaugh, supra.* The policy of early determination by means of a suppression hearing applies not only to constitutional issues but also to nonconstitutional claims capable of determination without a trial on the general merits. *State v. Ulis* (1992), 65 Ohio St.3d 83, 85, 600 N.E.2d 1040, 1041.

The trial court found the language of R.C. 4511.19 to be "controlling" in determining appellant's suppression motion. R.C. 4511.19(D) provides:

"The person tested may have a physician, a registered nurse, or a qualified technician or chemist of his own choosing administer a chemical test or tests in addition to any administered at the request of a police officer, and shall be so advised. The failure or inability to obtain an additional chemical test by a person shall not preclude the admission of evidence relating to the chemical test or tests taken at the request of a police officer."

---

**2.** Actually, the trial court's judgment entry only generally refers to a "violation of O.R.C. 4511.19" without specifying any subsection. However, since the criminal complaint only charged appellant with violating R.C. 4511.19(A)(3), it is apparent that he was convicted of violating that subsection.

In Ohio, it has been held that the exclusionary rule will not ordinarily be applied to evidence which is tainted by a statutory, as opposed to a constitutional, violation, absent a legislative mandate requiring application of the exclusionary rule. See, *e.g., Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 235, 18 O.O.3d 435, 437, 416 N.E.2d 598, 600; *State v. Cunningham* (Feb. 14, 1992), Marion App. No. 9–91–32, unreported, 1992 WL 29257; *State v. Jackson* (Nov. 6, 1990), Franklin App. No. 90AP–457, unreported, 1990 WL 174069; *State v. Myers* (1990), 66 Ohio App.3d 717, 720, 586 N.E.2d 155, 157.

The Supreme Court of Ohio has effectively determined that the language of R.C. 4511.19(D) that states that the bodily substance in R.C. 4511.19 prosecutions "shall be analyzed in accordance with methods approved by the director of health" constitutes just such a legislative mandate. It requires suppression of test results where a *per se* offense is charged and there has not been substantial compliance with Ohio Department of Health ("ODH") regulations. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32, 34; *State v. Halko* (July 16, 1986), Hamilton App. No. C–850656, unreported, 1986 WL 7855. Conversely, in *State v. Myers* (1971), 26 Ohio St.2d 190, 55 O.O.2d 447, 271 N.E.2d 245, the Supreme Court of Ohio held at paragraph one of the syllabus that the failure to advise a person that he had a statutory right to an additional independent test as required by R.C. 4511.19 did not render the results of a police-administered test inadmissible in evidence at trial. In so holding, the *Myers* court in construing language in former R.C. 4511.19(B), now contained in subsection (D), stated at 196–197, 55 O.O.2d at 450–451, 271 N.E.2d at 250:

"Rather than being faced with a constitutional problem in the case at bar, we are confronted with a statutory requirement that the person '*shall* be so advised,' with no *express* sanction provided for the failure of the police officer to do so. With that in mind, we must look to the statutory rule in this state that the reversal of a lower court's conviction on the basis of 'the admission or rejection of any evidence offered against or for the accused' shall not be had 'unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby.' R.C. 2945.83. Accordingly, in the absence of a showing of prejudice having accrued to a defendant by the failure to advise him of his right to have an independent test made, as provided in R.C. 4511.19(B), the results of a chemical test so administered may not be excluded from evidence. The record before us discloses no prejudice accruing to appellee from the admission of evidence regarding the chemical test performed; nor does it disclose evidence sufficient to support a finding as a matter of law that this test was improperly administered or its results erroneous.

"In reaching this result, we are aware that there is no effective leverage available to a defendant which may be employed to compel police officials to

advise a suspect as required by R.C. 4511.19(B). This was, and is, a matter for the General Assembly. In our view, there is no judicial machinery available to produce the missing sanction. * * * " (Emphasis *sic.*)

This case is similar to *Myers* in the following respects: (1) although the statute provides that a person tested has the right to an independent test, it specifies no sanction for the state's interference with that right; and (2) appellant does not contend either that the BAC Verifier test administered to him was improper or failed to substantially comply with ODH regulations. See, also, *State v. Mathiesen* (Apr. 15, 1991), Stark App. No. CA–8341, unreported, 1991 WL 59863 (applying *Myers* in an R.C. 4511.19[A][3] case).

Nevertheless, a leading treatise that acknowledges the *Myers* holding further states that the "statute should not be interpreted to sanction the state's intentional interference with the defendant's right to obtain a second test." Painter & Looker, Ohio Driving Under the Influence Law (1 Ed.1988) 109, T 11.14(B). We agree and distinguish *Myers* upon this basis. Furthermore, we believe prejudice to the appellant may be inferred under these facts because the denial of a reasonable opportunity to make a phone call eliminated his best opportunity to refute evidence that the chemical test was accurate. In this case, it was uncontroverted that despite appellant's repeated requests for an alternate test, he was not allowed access to a telephone to make provisions for the alternate test.

In overruling the motion to suppress, the trial court relied on a literal reading of the language of R.C. 4511.19 that "the failure or inability to obtain an additional chemical test by a person shall not preclude the admission of evidence relating to the chemical test or tests taken at the request of a police officer." However, in analyzing similar language in an Oregon statue, an Oregon appellate court stated:

"While a literal reading of this provision supports that state's argument, this language must be construed consistently with the remainder of the statute which requires that an arrestee be given the opportunity to obtain an independent chemical analysis. Thus, we think the term 'failure' to obtain a blood test must refer to the situation where an arrestee makes no effort or request to obtain a test. Likewise, 'inability' to obtain a test refers to the situation where, for some reason independent of the conduct of either the arrestee or the police, such as loss of the blood sample by the hospital performing the test, an independent chemical analysis cannot be obtained. Where, as here, the arrestee does not obtain an independent test because he is denied a *reasonable* opportunity to do so by the police, there is neither a 'failure' nor an 'inability' to obtain a test under the statute. To construe the provisions of ORS 487.810 in any other manner would be to render meaningless the requirement of the statute that the arrestee be given the opportunity to obtain an independent chemical analysis of his blood,

and would allow the police to profit from their own misconduct in preventing an arrestee from obtaining such a test. The trial court did not err in ordering the results of the breathalyzer suppressed for violation of the statute." (Emphasis *sic.*) *State v. Hilditch* (1978), 36 Ore.App. 435, 438, 584 P.2d 376, 377.

The *Hilditch* result has been adopted and applied in other jurisdictions with analogous statutory provisions. *Lockard v. Town of Killen* (Ala.Crim.App.1990), 565 So.2d 679, 682; *State v. Dressler* (N.D.App.1988), 433 N.W.2d 549, 552; *Provo City v. Werner* (Utah App.1991), 810 P.2d 469, 473; see, also, 4 Erwin, Defense of Drunk Driving Cases (3 Ed.1991) 30–16–17, Section 30.04[2]. As noted in Painter & Looker, *supra,* a distinction can be drawn between a defendant's own inability or inaction in obtaining a second test, for whatever reason, and the state's active conduct in preventing the exercise of this second test option. Although the language of the statute in *Hilditch* is slightly different, we are persuaded that its interpretation of the "failure" and "inability" provision is correct.

Clearly, the state's conduct prevented appellant from getting a second test. Denial of a reasonable opportunity to obtain such a test cannot be equated with the *defendant's* "failure or inability" to obtain the additional chemical test. We acknowledge that this court is not in a position to overrule *Myers* or to declare that it was wrongly decided. We also realize that *Myers* essentially states that while the statute provides a right to obtain a second test, its failure to provide a sanction in this regard requires a legislative, rather than a judicial, remedy. Nonetheless, we rely on the rule set forth in *State ex rel. Cleveland Elec. Illum. Co. v. Euclid* (1959), 169 Ohio St. 476, 479, 8 O.O.2d 480, 482, 159 N.E.2d 756, 759 which states, "it is a basic presumption in statutory construction that the General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute it is intended to accomplish some definite purpose." Accordingly, we believe it would be unreasonable to render the right provided by statute meaningless by concluding there is no suppression remedy available where the state actively precludes its exercise. Therefore, we hold that where an accused in an R.C. 4511.19(A)(3) prosecution is denied access to a telephone despite his requests to arrange an independent chemical test, the test conducted by the law enforcement officials must be suppressed. Accordingly, for the foregoing reasons, appellant's assignment of error is sustained, and the judgment of the trial court is reversed.

*Judgment reversed.*

STEPHENSON and PETER B. ABELE, JJ., concur.