Argued and submitted June 27, affirmed December 27, 2012, petition for review denied June 20, 2013 (353 Or 747)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DONNA MARIE DAVIS,
*Defendant-Appellant.*

Deschutes County Circuit Court
MI083040; A146797

292 P3d 666

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII) and reckless driving, contending that the trial court erred in denying her motion to suppress the results of an Intoxilyzer test. Defendant argues that the results should be suppressed because she was denied a reasonable opportunity to obtain an independent blood test, in violation of ORS 813.150.[1] The state responds that defendant was not denied a reasonable opportunity to take the blood test because she did not request the test at the appropriate time—*after* taking the Intoxilyzer test—and, even if she made a timely request, the police did not prevent or hinder her from taking the test. Though we cannot conclude that ORS 813.150 requires that a defendant request an independent blood test *after* taking a breath test, we agree with the state's latter argument, and we therefore affirm.

We state the facts consistently with the trial court's findings, which are supported by evidence in the record. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). Lieutenant Utter stopped defendant after seeing her commit various traffic violations. He asked defendant some questions and, based on his observations of her, believed that she was intoxicated. Shortly thereafter, Deputy Gotchy arrived at the scene and administered field sobriety tests. Defendant performed poorly. Defendant was arrested for DUII and transported to the police station, where Gotchy asked her if she would submit to a breath test. In response, defendant requested a blood test. Gotchy explained that defendant had to first decide whether she would consent to a breath test,

---

[1] ORS 813.150 provides:

"In addition to a chemical test of the breath, blood or urine administered under ORS 813.100 or 813.140, upon the request of a police officer, a person shall be permitted upon request, at the person's own expense, reasonable opportunity to have any licensed physician and surgeon, licensed professional nurse or qualified technician, chemist or other qualified person of the person's own choosing administer a chemical test or tests of the person's breath or blood for the purpose of determining the alcoholic content of the person's blood or a chemical test or tests of the person's blood or urine, or both, for the purpose of determining the presence of a controlled substance or an inhalant in the person. The failure or inability to obtain such a test or tests by a person shall not preclude the admission of evidence relating to a test or tests taken upon the request of a police officer."

and then, after the breath test, she had the option of taking a blood test at her own expense. Defendant consented to the breath test, which registered a 0.16 blood alcohol content, twice the legal limit. She did not repeat her request for a blood test. No blood test was administered, and defendant was processed into jail.

Defendant was subsequently charged with DUII, ORS 813.010, and reckless driving, ORS 811.140. She filed a motion to suppress the results of the breath test, arguing that she had been denied a reasonable opportunity to obtain an independent blood test in violation of ORS 813.150 because Gotchy ignored her request. At the hearing, defendant testified that she requested a blood test twice: first, while in the patrol car on the way to the police station, and again before consenting to the breath test at the police station. Gotchy testified that defendant requested the blood test only once: while at the police station, before consenting to the breath test. The trial court found Gotchy's testimony more credible. Because defendant did not request a blood test after the breath test, the trial court concluded that the police did not prevent her from obtaining the test and she was therefore not denied a reasonable opportunity to do so. On that basis, the trial court denied defendant's motion to suppress. Defendant entered a conditional guilty plea, reserving her right to appeal, ORS 135.335(3). On appeal, defendant reiterates her argument from below.

ORS 813.150 provides,

"In addition to a chemical test of the breath, blood or urine administered under ORS 813.100 or 813.140, upon the request of a police officer, *a person shall be permitted upon request*, at the person's own expense, *reasonable opportunity* to have any licensed physician and surgeon, licensed professional nurse or qualified technician, chemist or other qualified person of the person's own choosing administer a chemical test or tests of the person's breath or blood for the purpose of determining the alcoholic content of the person's blood ∗ ∗ ∗."

(Emphases added.) "ORS 813.150 does not require an officer to advise an individual that he or she has a right to have

an independent breath or blood test." *State v. Snuggerud*, 153 Or App 300, 311-12, 956 P2d 1015, *rev den*, 327 Or 554 (1998). The statute does, however, require that a person who so requests be permitted a reasonable opportunity to obtain such a test. *Id.* at 312. A defendant is denied a "reasonable opportunity" to obtain an independent blood test when police conduct either prevents or hinders the defendant's attempt to obtain a test. *State v. Darlin*, 122 Or App 172, 177, 857 P2d 859 (1993).

The state argues that ORS 813.130(2)(g) establishes that a defendant's opportunity to request a blood test under ORS 813.150 arises only after taking a breath test. ORS 813.130 provides requirements for information about rights and consequences for purposes of ORS 813.100, the statute governing implied consent to a breath or blood test, and ORS 813.410, suspension upon receipt of police report on implied consent test. Subsection (2)(g) provides:

> "*After* taking a test under ORS 813.100, the person will have a reasonable opportunity, *upon request*, for an additional chemical test for blood alcohol content to be performed at the person's own expense by a qualified individual of the person's choosing."

ORS 813.130 (emphases added). According to the state, defendant's reasonable opportunity must be provided only if she makes the request *after* taking the police-administered test, and the undisputed facts disclose she did not do so; thus, defendant was not denied a reasonable opportunity to take a blood test under ORS 813.150.

The state's interpretation of the statute, however, does not withstand grammatical analysis. It depends on the proposition that the phrase "[a]fter taking a test under ORS 813.100" modifies "request"—that is, it answers the question, "What kind of request? An after-the-test request." "After taking a test under ORS 813.100," however, is an adverbial phrase and not an adjectival;[2] it describes *when* an event will occur, and here, it modifies the verb phrase, "will have a reasonable opportunity"—that is, it answers the ques-

---

[2] Exceptions include such phrases as "after party," as in "They met at an after party," where "after" modifies the noun "party." We do not think the legislature intended to indicate anything like an "after request."

tion, "Will have a reasonable opportunity when? Will have the opportunity *after* the test." Thus, ORS 813.130(2)(g) establishes that a defendant will have a reasonable opportunity to take a blood test "after" taking an implied consent breath test, and that opportunity arises "upon request." The text does not specify *when* the request must be made. Here, because defendant made a request, we must determine whether Gotchy prevented or hindered defendant such that she was denied a reasonable opportunity to take the test.

Defendant contends that, once a defendant makes a *prima facie* showing that she requested an independent blood test, the burden shifts to the state to prove that the police provided the defendant with a reasonable opportunity to obtain the test or that the defendant unambiguously waived her request. Defendant analogizes ORS 813.150 to the right to privately consult with an attorney before consenting to a breath test. Under the right to counsel clause in Article I, section 11, of the Oregon Constitution, an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test. *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988). The state has the burden to show that a defendant was afforded a reasonable opportunity to consult with counsel in private. *State v. Carlson*, 225 Or App 9, 14, 199 P3d 885 (2008). If the state argues that a defendant waived that right, the state also has the burden of showing that waiver. *Id*. If a suspect asks to speak with counsel at the time of the arrest, the police must honor the request even if the suspect does not renew it upon arrival at the police station. *State v. Matviyenko*, 212 Or App 125, 128, 157 P3d 268 (2007).

However, an arrested driver's constitutional right to counsel is not equivalent to a statutory right to request a blood test. We decline to confer upon the latter the status of a constitutional right by shifting the burden of proof to the state. Therefore, we conclude, consistently with our prior case law, that the burden is on defendant to show that she was denied a reasonable opportunity to obtain the test.

Defendant argues that Gotchy prevented her from obtaining a blood test by ignoring her request and

processing her into jail after administering the breath test. Defendant analogizes this case to *State v. Hilditch*, 36 Or App 435, 438, 584 P2d 376 (1978), a case in which we held that the defendant was denied a reasonable opportunity to obtain a blood test. In that case, the defendant was arrested for DUII and was administered a Breathalyzer test. *Id.* at 437. The defendant then requested that he be taken to the local Veterans' Hospital to have an independent blood test because he was entitled to free medical services there. *Id.* Instead, he was taken to a community hospital and was refused a blood test because he did not have money to pay for it. *Id.* The defendant was allowed to call his wife at their home about 16 miles from the hospital to bring him the funds to pay for the test. *Id.* However, the arresting officer returned the defendant to the jail after waiting only 15 minutes for the defendant's wife to arrive, although he testified that he knew it would take her at least 30 minutes to reach the hospital. *Id.* The defendant attempted to obtain a blood test several hours later when he was released on bail but was told by the hospital staff that due to the long lapse of time it would serve no purpose. *Id.*

We concluded that the defendant was not given a reasonable opportunity to obtain an independent blood test. *Id.* at 438. In reaching that conclusion, we reasoned that *former* ORS 487.810 (1977)[3] did not require that the police take a defendant to a hospital. *Id.* Rather, the statute required only that the defendant be given a "reasonable opportunity" to have a test administered by a person of his choosing. *Id.* Thus, we concluded that, because the police, having taken the defendant to the hospital, did not allow reasonable time for the defendant's wife to bring the funds, the defendant was denied his statutory right. *Id.*

Conversely, in *Snuggerud*, we held that the defendant was not denied a reasonable opportunity to obtain a blood test. 153 Or App at 312. After the defendant took the Intoxilyzer test, the arresting officer said, "If you'd wish to have a blood test—." *Id.* The defendant replied, "I'd rather have a blood test, that's for sure." *Id.* The defendant then

---

[3] *Repealed by* Or Laws 1983, ch 338, § 978. *Former* ORS 487.810 provided essentially the same right to an independent blood test as does ORS 813.150.

requested, and took, a second Intoxilyzer test. *Id.* He made a telephone call, and a friend later picked him up. *Id.* We held that the defendant was not prevented by any "affirmative conduct" of police officers from getting a blood test. *Id.* The defendant's comment that he would "rather have a blood test" did not create an obligation to transport the defendant to a hospital. *Id.* The officer's only obligation once he became aware of the defendant's desire to take a blood test was to permit him a reasonable opportunity to get that test, and we held that the officer satisfied that duty. *Id.*

Here, defendant was similarly not denied a reasonable opportunity to have a blood test. Gotchy had no affirmative obligation to take defendant to the hospital absent her request for a test, which she did not raise after he instructed her that she could request the test following the Intoxilyzer. His only obligation was neither to prevent nor hinder her. *Darlin*, 122 Or App at 177. Defendant's only basis for arguing that she was hindered or prevented from getting a blood test was that, knowing that she had earlier expressed a wish to take the blood test, the police "continued to book defendant into jail." We reject defendant's implicit argument that the police had an affirmative obligation to either remind defendant of her earlier request or facilitate it. She did not request to be transported to a hospital or a physician, nor is there anything in the record to indicate how long the booking process took, how long defendant was in jail, or when she was released. Thus, we cannot conclude from the record that defendant was prevented or hindered by any affirmative conduct of police officers from getting a blood test such that she was denied a reasonable opportunity to the test under ORS 813.150.

Affirmed.